**Ana Maria TORRES–RIOS, et al., Plaintiffs, Appellants,**

v.

**LPS LABORATORIES, INC., et al., Defendants, Appellees.**

No. 97–2424.

United States Court of Appeals, First Circuit.

Heard May 5, 1998.

Decided Aug. 4, 1998.

---

John E. Mudd, for Plaintiffs–Appellants.

G. William Austin and Jorge F. Freyre, for Defendants–Appellees.

Before SELYA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

This product liability action arises from a workplace accident in which a cleaning product manufactured by LPS Laboratories, Inc. was ignited by sparks from a welding torch, triggering a flash fire that severely burned Felix Martinez Diaz. Martinez' wife and two daughters brought suit, claiming primarily that the warnings contained in the safety instructions accompanying the product were inadequate. The district court granted summary judgment for LPS, concluding as a matter of law that the product warnings met all applicable standards and that the alleged deficiency in the warnings was not, in any event, the cause of the accident. The court also rejected appellants' defective design claim as untimely. We affirm.

The following facts are undisputed. Martinez was injured on May 4, 1995, while using LPS's product, CFC–Free Electro Contact Cleaner, to clean a piece of electrical equipment known as the "thermatool." The cleaner had been delivered to Martinez's employer, Bayamon Steel, in a 55–gallon drum that was kept in a storage area, and Martinez used a pail to carry a quantity of the liquid from the drum to the thermatool. At the time of the accident, he was spraying the chemical onto the internal electrical parts of the thermatool. A few feet away, other employees were working to repair a mill. Their use of a welding torch ignited the cleaner and triggered a flash fire in which Martinez suffered serious burns over more than fifty percent of his body.

Safety warnings appeared on labels on the top and side of the drum. Among other information, the labels contained the word "DANGER," advised that the cleaner was

"EXTREMELY FLAMMABLE," and specified certain actions to be taken or avoided (e.g., "Keep away from heat, sparks and open flame"; "Prevent buildup of vapors—use adequate cross-ventilation"; "[T]urn off all sources of ignition during use and until vapors are gone"). A "material safety data sheet" ("MSDS"), required by federal law, *see* 29 C.F.R. § 1910.1200, also was available. Under the heading "Unusual fire and explosive hazards," it warned that "[f]lammable vapors which are heavier than air may accumulate in low areas and/or spread along the ground away from handling site" and it instructed that the cleaner should be used and stored "with adequate ventilation" and "away from ignition sources."

These safety materials all were in English. The drum also bore a diamond-shaped warning label that contained a flame symbol and "FLAMMABLE LIQUID" written in white on a red background.

The central issue in this case is the adequacy of the information provided by LPS concerning the cleaner's flammability. We first consider whether the district court properly granted summary judgment on that issue and then briefly address plaintiffs' effort to litigate a defective design claim.

### A. *Adequacy of Warnings*

Even when considered in the light most favorable to the plaintiffs, as we do upon review of a district court's grant of summary judgment, *see Flynn v. City of Boston,* 140 F.3d 42, 44 (1st Cir.1998), the warning defect claim is lacking. *See Aponte–Rivera v. Sears Roebuck de P.R.,* 98 JTS 12, Certified Translation at 10 (1998) (App. V. at 1282) (noting three types of defective product claims, including those based on inadequate warnings). Although the record contains evidence from plaintiffs' experts on ways to improve the information provided with the cleaner, this is not enough to establish that the product is defective.

A detailed scheme of federal statutes and regulations governs the handling and labeling of hazardous substances. *See, e.g.,* 15 U.S.C. §§ 1261–1277 (Federal Hazardous Substances Act); 29 C.F.R. § 1910.1200 (governing hazard communication in the workplace); 16 C.F.R. § 1500.121 (requirements for safety warnings). These provisions are designed to set a comprehensive standard for workplace safety, *see* 29 C.F.R. § 1910.1200(a)(1), (2), and "to preempt any legal requirements of a state, or political subdivision of a state, pertaining to this subject," *id.* at § 1910.1200(a)(2). To succeed, plaintiffs must demonstrate that defendant's warnings failed to satisfy the federal standards. *See Moss v. Parks Corp.,* 985 F.2d 736, 742 (4th Cir.1993) (granting summary judgment to manufacturer of paint thinner based on finding that product was properly labeled in accordance with federal standards).

Plaintiffs assert three primary deficiencies in the labels and other safety information: the warnings were given only in English even though the dominant language in Puerto Rico is Spanish; the safety information was too small to be seen easily; and the warning failed to convey the seriousness of the fire danger, particularly when the cleaner is sprayed (as it was in this case). We consider each of these in turn.

■ (1) *Absence of warnings in Spanish.* The regulation that sets out the necessary elements of a safety label does not explicitly contain a language requirement. *See* 29 C.F.R. § 1910.1200(f)(1). Two provisions of the same regulation make it clear, however, that the obligation under federal law is to provide the information in English. Subsection (f)(9) states that an *employer* shall ensure that labels or other forms of warning are in English and that they *may* add information in other languages, as appropriate. Subsection (g) explicitly states that the material safety data sheet, which manufacturers must provide, "shall be in English (although the employer may maintain copies in other languages as well)."

These provisions thus establish that federal law requires manufacturers to provide safety warnings only in English and that it is the responsibility of individual employers, at their discretion, to provide additional warnings in other languages. In this case, the 55–gallon drum containing the cleaner also prominently displayed the pictorial of a

flame, which is considered a universal symbol of flammability. That label filled any language gap,[1] putting users on notice that precautions needed to be taken to avoid fire.[2] Although the pictorial did not fully explain the danger, it provided clear warning that, before working with the product, the user should either read the accompanying safety instructions or find someone to translate them. Absence of Spanish warnings, therefore, did not violate federal law and could not render the cleaner a defective product. *Cf. Ramirez v. Plough*, 6 Cal.4th 539, 25 Cal. Rptr.2d 97, 863 P.2d 167, 174 (1994) ("Defining the circumstances under which warnings or other information should be provided in a language other than English is a task for which legislative and administrative bodies are particularly well suited.").

■ (2) *Size of type.* One of plaintiffs' experts, Dr. Stuart Parsons, testified in deposition and stated in a report that the lettering on the instructions label was too small for easy reading. In reaching that conclusion, he relied on standards developed by professional and technical societies through the American National Standards Institute, whose guidelines do not have the force of law. There is no evidence that the label fails to satisfy even the strict size requirements for safety labels intended or packaged in a form suitable for household use, *see* 15 U.S.C. § 1261(p)(2); 16 C.F.R. § 1500.121(a)(1), (c) (specifying type size and other "prominence, placement, and conspicuousness" requirements). In the workplace, containers of hazardous materials are required to bear labels or other indicators with "the identity of the material and appropriate hazard warnings." 29 C.F.R. § 1910.1200 App. E(4)(A). Such labels

must be legible, and prominently displayed. There are no specific require-

ments for size or color, or any specified text.

*Id.*[3] Indeed, another of plaintiffs' experts, Dr. Barry Sanders, noted that "[t]his label probably meets the letter of the law." Although he added, "but not the spirit of the law ...," he evidently was suggesting that the federal regulations should be stricter.[4]

We note, moreover, that the reasonable size of a warning must be linked to whether it is sufficiently eye catching to put the product user on notice of the relevant hazards. Here, the prominent red-and-white pictorial serves the function of drawing attention to the fire danger from the cleaner. The fact that the more detailed information is not presented in the optimal size for distance viewing is thus less significant than if it alone was relied upon to alert the user to the danger. The same rationale takes care of plaintiffs' related argument that there was insufficient contrast between the colors used for the safety information label, which featured black text on a blue background. The size and color of the warning label therefore did not render this product defective.

■ (3) *Content of the label.* Plaintiffs contend that the label did not convey the seriousness of the fire danger from the vapors discharged by the cleaner, and failed in particular to warn of the magnified risk of a flash fire when the product is sprayed. We agree that users would be better informed if the label contained more information. That, however, would be true at most levels of detail, and the question we face here is not whether the label is perfect but whether a jury could find that the product is unreasonably dangerous with its current warnings. We conclude that such a finding is insupportable on this record. *Cf. Canty v. Ever-Last Supply Co.*, 296 N.J.Super. 68, 685 A.2d 1365,

1. The pictorial was required by regulations promulgated under the Hazardous Materials Transportation Act. *See* 49 U.S.C. §§ 5101–5127; 49 C.F.R. § 172.400; *id.* at 172.419.

2. Martinez acknowledged seeing the flame label and claiming that it portended flammability.

3. Plaintiffs' reliance on the specifications contained in 29 C.F.R. §§ 1910.144 and 1910.145 is inappropriate, as those provisions cover portable

containers and workplace safety signs, respectively, and not the labeling of hazardous products in a shipping container such as the 55–gallon drum of Contact Cleaner.

4. Sanders was directly addressing the content of the label when he made his comment, but there is no indication that he considered other aspects out of compliance with the applicable regulations.

1377 (1996) ("Disagreement over the adequacy or sufficiency of the information provided on a label does not necessarily raise material issues of fact as to compliance. What matters is whether the label satisfies the requirements of the FHSA, not whether a label defines every phrase and addresses every potential hazard.").

Plaintiffs point to an ANSI recommendation that a warning for a product of this type include: "VAPOR MAY CAUSE FLASH FIRE." The description of the label given above shows, however, that the safety label warned against a buildup of vapors, stating that adequate cross-ventilation should be maintained. *See supra* at 12–13. The MSDS further warned that "[f]lammable vapors which are heavier than air may accumulate in low areas and/or spread along the ground away from handling site" and it instructed that the cleaner should be used and stored "with adequate ventilation" and "away from ignition sources." We think it a matter of common sense that more vapors are produced when a liquid is sprayed, and while stating that fact explicitly would reinforce the awareness of danger, its omission in light of the information that was provided cannot properly be termed a product defect. In sum, all relevant information related to the hazard that caused this accident was provided. While the ANSI statement is more direct, its content duplicates other information that was provided.

We emphasize, as an aside, that what occurred in this case was explicitly warned against, both by the label and federal law. The safety information advised that the cleaner and sparks—a normal by-product of welding—were a dangerous combination. To avoid precisely the sort of accident that occurred, federal law explicitly prohibits weld-

ing within close proximity to the use of flammable liquids. *See* 29 C.F.R. § 1910.252(a)(2).[5] The regulation specifies thirty-five feet as an appropriate distance between welding and combustibles; the welding here took place no more than five or six feet from Martinez's work area. Even if in other contexts more information would have been necessary to put the user on notice of the risk of fire, that was not the case here.[6]

We therefore hold that, on this record, there is no material dispute of fact concerning the adequacy of the warnings on the drum of Contact Cleaner. The combination of the flame pictorial and safety information labels satisfied applicable federal regulations and provided sufficient notice to users of the highly flammable nature of the cleaner and the danger of accumulated vapors from it. We therefore affirm the district court's grant of summary judgment on the defective warning claim.

B. *Design Defect Claim.*

LPS moved for summary judgment on the defective warnings claim in February 1997. Plaintiffs obtained an extension for filing their opposition and did so on May 16, 1997. In it, for the first time in the case, they explicitly also alleged that the cleaner was defective in design. On June 18, 1997, some ten months after the court's deadline for filing amendments to the pleadings, plaintiffs sought permission to amend the complaint to add a defective design claim.

In denying leave to amend in August 1997, the district court termed the motion "belated" and concluded that plaintiffs should have presented the design defect claim at least by the time the parties prepared the Joint Case Management Memorandum the previous fall.

---

5. The regulation states, in relevant part:
   (vi) *Prohibited areas.* Cutting or welding shall not be permitted ... (C) [i]n the presence of explosive atmospheres (mixtures of flammable gases, vapors, liquids, or dusts with air)....
   (vii) *Relocation of combustibles.* Where practicable, all combustibles shall be relocated at least 35 feet (10.7 m) from the work site.
   Another regulation included within the Occupational Safety and Health Standards governing "Hazardous Materials" also recognizes the risk of welding:

   *Sources of ignition.* In locations where flammable vapors may be present, precautions shall be taken to prevent ignition by eliminating or controlling sources of ignition. Sources of ignition may include open flames, lightning, smoking, cutting and welding....
   29 C.F.R. § 1910.106(b)(6).

6. This is in essence the "lack of causation" identified by the district court as an alternative basis for its judgment.

On appeal, plaintiffs argue that the district court erred in rejecting the claim both because it was implicitly included within their original pleadings and because they could not develop the claim until they obtained complete information from LPS in April 1997.

We have little difficulty in affirming the district court's judgment on this issue. At no time from the filing of the original complaint through the pretrial order did plaintiffs invoke language that signals a design defect claim, which most commonly would be an allegation that the product's benefits did not outweigh its risks. *See, e.g., Collazo–Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 25–26 (1st Cir.1998) (discussing test for design defect in Puerto Rico) (citing *Aponte–Rivera*, Certified Translation at 10, 29 n.9). Plaintiffs repeatedly asserted only that defendants produced an "extremely" or "inherently" dangerous product that "also" was defective because of inadequate warnings. But an allegation of danger does not alone present a design defect claim; indeed, describing a product as "inherently dangerous" is an element of a defective warnings claim. *See, e.g., Rhodes v. Interstate Battery System of America*, 722 F.2d 1517, 1521 (11th Cir.1984) (manufacturer of *dangerous* product must use reasonable efforts to warn potential users; question regarding warning was whether it was adequate to apprise user of *inherent* dangers); *id.* (Hill, J., dissenting) (battery is a defective product if consumers are not warned of *inherently dangerous characteristics* ); *East Penn Mfg. Co. v. Pineda*, 578 A.2d 1113, 1118 (D.C.Ct.App. 1990) ("The failure to warn branch of strict liability recognizes that some products, even if perfectly designed and manufactured, cannot be made completely safe for their intended use."); *Aponte–Rivera*, Certified Translation, at 13 (noting that one element of warnings claim is that "manufacturer knew or should·have known of the *inherent danger* of the product" (emphasis added)).

At best, therefore, plaintiffs' assertion that the cleaner "also" was defective based on its warnings gave a hint of a possible additional claim. Given the absence of any development of such a claim by the time of the Joint Case Management Memorandum, we join the district court in concluding that a design defect claim was not raised by the complaint.

We similarly concur in the court's rejection of plaintiffs' effort to amend the complaint to add a design defect theory. Plaintiffs defend their tardiness by stating that they were unable to flesh out a design defect allegation until they deposed LPS's experts in April 1997, and they blame LPS for withholding information during the early stages of the case. We are unpersuaded. While meaningful discovery might have been necessary to develop *facts* to support a design defect claim, the allegation that the cleaner was unjustifiably (as distinguished from "inherently" or "extremely") dangerous strikes us as having been an obvious alternative—if intended—from the outset.

We note that plaintiffs' brief identifies the material safety data sheets for LPS's other contact cleaners as significant newly obtained evidence. Those sheets presumably were available from multiple sources and could have been obtained through purchase of the products. In any event, if LPS was unfairly blocking plaintiffs' legitimate earlier efforts to obtain relevant information, plaintiffs should have informed the court of the problem before the case had proceeded to the brink of summary judgment. Allowing addition of a new theory of liability after the defendant's February motion for summary judgment and after discovery had closed in April unquestionably would prejudice defendant, whose focus until that time had been on the adequacy of the warning labels and not on the costs and benefits of the product itself. In these circumstances, we find no abuse of discretion in the district court's determination that the proposed amendment was too late. *See, e.g., Hayes v. New England Millwork Distributors*, 602 F.2d 15, 19 (1st Cir.1979) ("undue delay" can be a basis for denying leave to amend).

For the foregoing reasons, the judgment of the district court is *AFFIRMED*.