GERTRUDE NAMUNDI & another[1] *vs.* ROCKY'S ACE
HARDWARE, LLC, & others.[2]

No. 11-P-1027.

Middlesex. January 3, 2012. - April 30, 2012.

Present: RAPOZA, C.J., GRAINGER, & SIKORA, JJ.

*Negligence,* Duty to warn, Hazardous substance.

Discussion of the standard of review applicable to a directed verdict on a pure
question of law in a civil action involving compliance of a product label
with the provisions of the Federal Hazardous Substances Act. [667-668]
In a civil action arising from injuries incurred when a can of paint stripper
ignited, the judge properly directed a verdict in favor of the defendants
(the manufacturer and sellers of the paint stripper), where the label of the
can complied with the Federal Hazardous Substances Act and its regula-
tions, in that, regardless of whether the word "poison" constituted a
"signal word" used to capture a consumer's attention but not intended to
provide notice of a specific hazard, the word was required to appear on the
label and to be capitalized [668-669]; in that the word "poison" constituted
"other cautionary material" that could be displayed in larger type than the
word "flammable" [669-671]; and in that no specific warning about the
flammability of the paint stripper's vapor (as opposed to the paint stripper
itself) was required on the principal display panel [671-673].

CIVIL ACTION commenced in the Superior Court Department on
August 10, 2007.

The case was tried before *Kathe M. Tuttman,* J., and a motion
for a new trial was heard by her.

*Timothy G. Lynch* for the plaintiffs.

*Myles W. McDonough* for the defendants.

GRAINGER, J. Congress has sought to create a balance between
a commercial duty to notify the public of dangers associated
with the use of a product, and the individual's responsibility to

[1] Geoffrey Kiwanuka.

[2] Rocky's Hardware, Inc.; Rocky's Hardware Business Trust; Ace Hardware
Corporation; and W. M. Barr & Co., Inc.

exercise common sense. Here, the plaintiffs appeal from a directed verdict in favor of the defendants on a products liability "failure to warn" claim. They contend that the judge erred in ruling as a matter of law that the label on a can of paint stripper complied with the Federal Hazardous Substances Act (FHSA), 15 U.S.C. §§ 1261 et seq. (2006). We affirm.

*Background.* In reviewing a directed verdict for the defendants, we consider all evidence in the light most favorable to the nonmoving party. See *Kattar* v. *Demoulas*, 433 Mass. 1, 18 (2000), citing *McAvoy* v. *Shufrin*, 401 Mass. 593, 596 (1988). In any event, the material facts are undisputed. The plaintiffs, Gertrude Namundi and Geoffrey Kiwanuka, purchased a can of "Ace Liquid Stripper" (stripper) from defendant Rocky's Ace Hardware, LLC. The product was manufactured by defendant W. M. Barr & Co., Inc. The front of the can carried the label seen here:

As can be seen, the label had a warning printed on the bottom that had the words "DANGER!" and "POISON!" in large capital letters, illustrated with a skull and crossbones.[3] Following the words "DANGER!" and "POISON!" the label also stated in still capitalized, but somewhat smaller, letters, "EXTREMELY FLAMMABLE. MAY BE FATAL OR CAUSE BLINDNESS IF SWALLOWED. VAPOR HARMFUL. SKIN AND EYE IRRITANT. Read other cautions and HEALTH HAZARD INFORMATION on back panel."[4]

---

[3]The illustrated skull and crossbones, clear in the record, reproduces as the white blur between "POISON" and "EXTREMELY."

[4]On the back panel of the can, the following was printed:

> "VAPORS MAY CAUSE FLASH FIRE OR IGNITE EXPLOSIVELY. VAPORS MAY TRAVEL LONG DISTANCES TO OTHER AREAS AND ROOMS AWAY FROM WORK SITE. KEEP AWAY FROM HEAT, SPARKS, FLAME AND ALL OTHER SOURCES OF IGNITION. . . .

> ". . . USE ONLY WITH ADEQUATE VENTILATION TO PREVENT BUILDUP OF VAPORS. Do not use in areas where vapors can

The stripper was stored in the plaintiffs' basement,[5] and a flash fire erupted as vapors were ignited by the pilot light on the hot water heater. The plaintiffs, husband and wife, both of whom suffered severe burns in the blaze, complained that the stripper was improperly labeled, defective, and unreasonably dangerous.

The judge directed a verdict in favor of the defendants on the failure to warn claim, ruling that the label complied with the FHSA.[6] The jury, so instructed, then found the defendants not liable on the plaintiffs' remaining claim for design defect. The plaintiffs then moved for a new trial. In this consolidated appeal from the judgment on the underlying jury verdict and the denial of the motion for a new trial, the only issue presented by plaintiffs is the label's compliance with the FHSA.

*Discussion.* 1. *Standard of review — FHSA compliance.* In reviewing a ruling on a directed verdict, we ask "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972), quoting from *Kelly* v. *Railway Exp. Agency, Inc.*, 315 Mass. 301, 302 (1943). "[A]n appellate court has plenary power of de novo review of all questions of law, including questions of law involving statutory construction." *Martha's Vineyard Land Bank*

---

accumulate and concentrate such as basements, bathrooms or small enclosed areas. Whenever possible, use outdoors in an open air area. If using indoors open all windows and doors and maintain a cross ventilation of moving fresh air across the work area. If strong odor is noticed or you experience slight dizziness, headache, nausea or eye-watering — STOP — ventilation is inadequate. . . ."

[5]The plaintiffs denied that the stripper was in use when the fire began, and disavowed a reference in the fire marshal's report that Namundi was observed by her husband with the can in her hand during the eruption. These competing inferences do not affect our analysis.

[6]The FHSA "preempts any state cause of action that seeks to impose a labeling requirement different from the requirements found in the FHSA and the regulations promulgated thereunder." *Milanese* v. *Rust-Oleum Corp.*, 244 F.3d 104, 109 (2d Cir. 2001). See *Moss* v. *Parks Corp.*, 985 F.2d 736, 740 (4th Cir.), cert. denied, 509 U.S. 906 (1993); *Comeaux* v. *National Tea Co.*, 81 F.3d 42, 43-44 (5th Cir. 1996). Therefore, if a label complies with the FHSA, no State tort duty based on a failure to warn may be maintained. *Moss, supra* at 739-740.

*Commn.* v. *Assessors of W. Tisbury*, 62 Mass. App. Ct. 25, 27 n.3 (2004) (citation omitted). The same rules of construction apply to both regulations and statutes. See *Johnson* v. *Commissioner of Pub. Welfare*, 414 Mass. 572, 578 (1993).

In the circumstances presented here, where neither the composition of the can's contents nor the label's appearance and wording is in dispute, we treat the compliance of the labeling under our interpretation of the FHSA and its enabling regulations as a pure question of law,[7] and "[w]e review the judge's rulings on questions of law de novo." *Trace Constr., Inc.* v. *Dana Barros Sports Complex, LLC*, 459 Mass. 346, 351 (2011). "[C]oncerning Federal law, we give great deference to decisions of Federal courts if they seem persuasive." *Commonwealth* v. *Murphy*, 448 Mass. 452, 462 (2007).

2. *FHSA compliance.* a. *The use of the word "POISON."* The plaintiffs' first argument on appeal is that the defendants violated Federal statutory and regulatory law in labeling the stripper, and by doing so misled the plaintiffs to believe that poison was the only hazard associated with use of the product. Specifically, the plaintiffs assert that because the word "POISON" was prominently placed at the beginning of the warning label, the plaintiffs were led to discount or dismiss the entire balance of the warning as simply an explanation of the product's poisonous qualities and a list of precautions to be taken against poison. It is tempting to dismiss this argument out of hand as an undeniable departure from common usage or common sense, especially bearing in mind that a label for any product with more than one hazardous quality must, perforce, start somewhere.[8] However,

---

[7]Some Federal courts have approached a label's compliance with the FHSA as a matter for the jury (or fact finder). See, e.g., *Milanese* v. *Rust-Oleum Corp.*, 244 F.3d at 113. Others have nominally defined this as a jury question, while ruling on summary judgment that there was no material dispute of fact, hence finding compliance as a matter of law. See *Moss* v. *Parks Corp.*, 985 F.2d at 741; *Torres-Rios* v. *LPS Labs., Inc.*, 152 F.3d 11, 13-15 (1st Cir. 1998). In these circumstances, as stated, we treat compliance with the FHSA as a matter of law, and we do not agree with an approach that would enable successive juries to find the identical label compliant and then noncompliant in two sequential cases. At least one Federal district court has stated the matter plainly: "[T]he question of whether or not [a] label complies with the requirements of the [FHSA] is a question of law." *Pennsylvania Gen. Ins. Co.* v. *Landis*, 96 F. Supp. 2d 408, 412 (D.N.J.), aff'd, 248 F.3d 1131 (3d Cir. 2000).

[8]While it does not bear on the plaintiffs' legal argument, we note that the

the Federal regulatory scheme here is characteristically complex and therefore amenable to a large number of interpretations that, once raised, we have the duty to address.

The plaintiffs assert in essence that the label followed standards more stringent than those actually applicable to the product's level of toxicity, thus disrupting the careful gradations of prominence for warnings of different perils established by the regulatory scheme. We, paradoxically therefore, examine certain requirements that may not apply to the stripper, but with which the label complied nonetheless.

(i) *Capitalization of "POISON."* The plaintiffs complain that the label displayed the word "poison" as a "signal word"[9] and assert that the FHSA and its regulations do not allow "poison" to be displayed in that category. The practical effect of deeming a particular word to be a "signal word" is that it is required to be entirely capitalized. See 16 C.F.R. § 1500.121(c)(4) (2011).

This argument fails on three counts. First, the regulatory scheme is at best unclear whether "poison" is deemed to be a signal word. Compare 16 C.F.R. § 1500.129 (2011) (referring to substances "required to bear *the signal word 'poison'* " [emphasis added]) with 16 C.F.R. § 1500.121(c)(4) (referring to "the word 'poison' if required *instead of a signal word*" [emphasis added]). Second, the word "POISON" is required to be entirely capitalized regardless of its classification. See *ibid.* ("the word 'poison' if required instead of a signal word . . . shall be in capital letters"). It is undisputed that the word "poison" is required on the label, because the stripper contains more than four percent methyl alcohol (methanol) by weight. See 16 C.F.R. § 1500.14(a)(4), (b)(4) (2011). Finally, there is no prohibition against capitalizing the word "poison," regardless of its definition under these different regulatory provisions.

(ii) *Relative size of "POISON" and "FLAMMABLE."* The plaintiffs complain that because "poison" is a specific "hazard" and not a signal word it is required to be the same size as, not

---

wife asserted that she had read the label selectively and had not read the words "EXTREMELY FLAMMABLE."

[9]"Signal words" are generally defined as terms, such as "DANGER" or "CAUTION," used to capture the consumer's attention but not intended to provide notice of a specific hazard. See 16 C.F.R. § 1500.121(a)(2)(vi).

larger than, the word "flammable," so that neither hazard is emphasized to the detriment of the other. Pursuant to 16 C.F.R. § 1500.121(c)(5), "[a]ll statements of principal hazard or hazards on a label shall appear in the same size and style of type, and shall appear in the same color or have the same degree of boldness."

This argument fails because, for purposes of the regulation, "poison" is not defined as a principal hazard. See 16 C.F.R. § 1500.121(b)(5)(i) ("poison" may be displayed *"together with the . . . statement[s] of principal hazard"* [emphasis added]). Because, as set forth above, poison is also not definitively a "signal word" we consider it to be *"[o]ther cautionary material,"* a distinct and separate category. 16 C.F.R. § 1500. 121(a)(2)(viii). *"Other cautionary material means all labeling statements, other than 'signal words' or 'statement(s) of principal hazard(s)' . . . ." Ibid.*[10] Accordingly, the assertion that "poison" may not be displayed in larger type than the following reference to flammability is unavailing.

Finally, we note that, notwithstanding its extensive recitation of categories and definitions, the regulatory scheme is intended to have some flexibility. If the Consumer Product Safety Commission (CPSC) finds that the above requirements of the FHSA, see 15 U.S.C. § 1261(p)(1), are "not adequate for the protection of the public health and safety in view of the special hazard presented by any particular hazardous substance, it may by regulation establish such reasonable variations or additional label requirements as it finds necessary." 15 U.S.C. § 1262(b). As stated, the stripper is covered by one of these regulatory variations because it contains more than four percent methyl alcohol by weight. See 16 C.F.R. § 1500.14(a)(4), (b)(4). Because the CPSC has found the requirements of 15 U.S.C. § 1261(p)(1) inadequate for substances containing more than four percent methyl alcohol, the label for "this substance shall include the signal word 'danger,' the additional word 'poison,'

---

[10]We acknowledge that in the realm of common usage or common sense, poison is properly termed a hazard. We are, however, in a different landscape, one created by Federal regulation. Further support for the existence of this departure from the vernacular is that the FHSA itself does not include the word "poison" in its illustrative list of principal hazard or hazards. See 15 U.S.C. § 1261(p)(1)(E).

and the skull and crossbones symbol." 16 C.F.R. § 1500.14(b)(4). The label conformed to these requirements.

b. *Placement of vapor warning.* The plaintiffs also assert that a specific warning about the flammability of the vapor, distinguished from the stripper itself, was required under the FHSA to be placed in the principal display panel. We do not agree.

Pursuant to 16 C.F.R. § 1500.121(b)(2)(ii), "[t]he signal word, the statement of principal hazard(s), and, if appropriate, instructions to read carefully any cautionary material that may be placed elsewhere on the label shall be blocked together . . . on the principal display panel . . . ." A plain reading of this regulation indicates all principal hazards must be placed on the principal display panel.[11] See *Richards* v. *Home Depot, Inc.,* 456 F.3d 76, 79 (2d Cir. 2006). "*Statement of principal hazard(s)*" is defined by regulation as meaning "that wording descriptive of the principal or primary hazard(s) associated with a hazardous substance required by section 2(p)(1)(E) of the [FHSA]. Some examples of such statements are 'HARMFUL OR FATAL IF SWALLOWED,' 'VAPOR HARMFUL,' 'FLAMMABLE,' and 'SKIN AND EYE IRRITANT.' " 16 C.F.R. § 1500.121(a)(2)(vii).

The case of *Torres-Rios* v. *LPS Labs., Inc.,* 152 F.3d 11 (1st Cir. 1998), which dealt with the specific issue of vapor flammability, is largely dispositive of this issue. See *Commonwealth* v. *Murphy,* 448 Mass. at 462.

In *Torres-Rios,* the plaintiff was using a flammable cleaning agent from a drum. *Torres-Rios, supra* at 12. A nearby welding torch ignited a flash fire and burned the plaintiff. *Ibid.* "Among other information, the [drum] labels contained the word 'DANGER,' advised that the cleaner was 'EXTREMELY FLAMMABLE,' and specified certain actions to be taken or avoided (e.g., 'Keep away from heat, sparks and open flame'; 'Prevent buildup of vapors — use adequate cross-ventilation'; '[T]urn off all sources of ignition during use and until vapors are gone')."

[11]"The area of the principal display panel is the area of the side or surface of the immediate container, or of the side or surface of any outer container or wrapping, that bears the labeling designed to be most prominently displayed, shown, presented, or examined under conditions of retail sale." 16 C.F.R. § 1500.121(c)(1).

*Id.* at 12-13. These warnings were not all stated on one display panel. *Id.* at 12. In finding that the labeling was in compliance with Federal law, the court reasoned that while the language could indeed be more specific, "[w]e think it a matter of common sense that more vapors are produced when a liquid is sprayed, and while stating that fact explicitly would reinforce the awareness of danger, its omission in light of the information that was provided cannot properly be termed a product defect. In sum, all relevant information related to the hazard that caused this accident was provided." *Id.* at 15.

While the facts sub judice are not identical to those in *Torres-Rios*, we find the United States Court of Appeals for the First Circuit's interpretation of the FHSA applicable here in all pertinent respects. The label of the stripper in this case explicitly stated in capital letters in the principal display panel located on the front of the can that the stripper was "EXTREMELY FLAMMABLE." Further, it directed the reader to the back panel for more details regarding the substance's hazards, where vapor flammability was exhaustively explained.

Neither the FHSA nor the applicable regulations mandate that the statement of principal hazards also indicate specifically in what form (here, vapor) the substance is flammable. The principal hazards must be on the principal display panel, and flammability is a principal hazard. The fact that the stripper is flammable in different material states, or the fact that some states are more flammable than others, does not render each state a distinct "principal hazard." See *ibid.* We decline to adopt an interpretation of the FHSA, nowhere stated explicitly, that would require a label separately to warn the consumer of every material flammable state of a product, bearing in mind that such a listing would need to be all inclusive in order not to be attacked as misleading.[12] To the extent that the CPSC might determine the advisability of amplified or more specific warnings, Congress has

_____

[12]The plaintiffs argue that *Milanese* v. *Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001), requires a principal display panel to indicate vapor flammability specifically. *Milanese*, however, characterized the issue of fact requiring denial of summary judgment in that case as whether the vapors actually presented a "danger of flash fire . . . separate and distinct from the flammability of the liquid product." *Id.* at 112. We do not view this formulation as a question of law relating to the FHSA but, rather, a largely factual dispute

authorized it to regulate accordingly. See 15 U.S.C. § 1261(p)(1)(F). In the absence of that determination, we decline "to displace the Secretary of the CPSC in filling in the interstices found in [the FHSA]." *Moss* v. *Parks Corp.*, 985 F.2d 736, 742 (4th Cir.), cert. denied, 509 U.S. 906 (1993).

Finally, the plaintiffs' argument that the label insufficiently defines precautionary methods regarding adequate ventilation lacks merit. Indeed, as the plaintiffs' brief highlights, the label must "state[] conspicuously" "precautionary methods describing the action to be followed or avoided." 15 U.S.C. § 1261(p)(1)(F). The back panel of the can gives exhaustive instructions on adequate ventilation. The back panel states, inter alia, "Do not use in areas where vapors can accumulate and concentrate such as basements, . . . open all windows and doors and maintain a cross ventilation of moving fresh air across the work area. If strong odor is noticed or you experience slight dizziness, headache, nausea or eye-watering —STOP — ventilation is inadequate." This is clearly sufficient as a matter of law.[13]

*Judgment affirmed.*

concerning the nature of the product. See *id.* at 106-107. The *Milanese* court distinguished its decision from that in *Torres-Rios*, because the *Torres-Rios* container, like the can of stripper in this case, specifically warned about vapor flammability in the descriptive language following the signal words and principal hazards. See *Milanese, supra* at 112-113.

[13]We do not address the plaintiffs' argument regarding the defendants' prior knowledge of the vapor hazard because it does not rise to a level acceptable for appellate review. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).